# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANDREW J. SCIACCA, JR., ANDREW J. SCIACCA, SR., father of minor child, and KIMBERLEY SCIACCA, mother of minor child,<br><br>       Plaintiffs,<br><br>  v.<br><br>THE DURHAM COUNTY BOARD OF EDUCATION, a/k/a BOARD OF EDUCATION DURHAM PUBLIC SCHOOLS ("Durham Public Schools"), THE DURHAM PUBLIC SCHOOLS BOARD OF EDUCATION ("The Board of Education"), GILBERT SINGLETON, JR. (in his Individual and official capacity), RENEE PRICE, (in her Individual and official capacity) DR. PASCAL MUBENGA, (in his Individual and official capacity), MICHAEL LEE, (a/k/a MIKE LEE) (in his Individual and official capacity), NATALIE BEYER (in her Individual and official capacity), ARASI ADKINS (in her Individual and official capacity), JOHN DOE I (unidentified assailant of Plaintiff), and JOHN DOE 2 (unidentified assailant of Plaintiff),<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:20CV94 |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion to Remand to Durham County Superior Court by Plaintiffs Andrew J. Sciacca, Jr., Andrew J. Sciacca, Sr., and Kimberley Sciacca [Doc. #16], a Motion to Dismiss by Defendants The Durham

County Board of Education a/k/a Board of Education Durham Public Schools and Durham Public Schools Board of Education ("Board's Motion") [Doc. #7], a Motion to Dismiss by Defendants Renee Price, Dr. Pascal Mubenga, Michael Lee, Natalie Beyer, and Arasi Adkins ("Individual Defendants' Motion") [Doc. #9], and Plaintiffs' Motion for Leave to Amend the Complaint [Doc. #30].  For the reasons explained below, the motion to remand is denied on the bases advanced by Plaintiffs. However, because the Board's Motion and the Individual Defendants' Motion are granted as to the federal claims, the associated motion to amend is denied as to those claims, and the only other party in the case has not participated in the action, the state law claims asserted against all Defendants are remanded.

I.

At all relevant times, Plaintiff Andrew Sciacca, Jr. ("Andrew") was a student at The School for Creative Studies in Durham, North Carolina. (Compl. ¶¶ 36-37 [Doc. #3].)  His parents, Plaintiffs Andrew Sciacca, Sr. and Kimberley Sciacca, made the school administration aware of Andrew's Individualized Education Plan ("IEP") when he enrolled as a ninth-grader. (Id. ¶ 38.)

On April 28, 2017, Andrew was riding the school bus driven by Defendant Gilbert Singleton, Jr. when Singleton offered to pay students riding the bus to slap Andrew. (Id. ¶¶ 41-45.)  The students then began slapping and otherwise attacking Andrew. (Id. ¶ 46.)  Singleton neither stopped the bus nor attempted to intervene. (Id. ¶¶ 47-48.)  Instead, he alerted the students that the bus cameras were recording, prompting a student to cover the camera with his jacket as the

2

attack on Andrew continued. (Id. ¶¶ 49-51.)  The incident caused Andrew to suffer pain, serious injuries, mental anguish, humiliation, and embarrassment. (Id. ¶ 56.)

Andrew reported the attack to his parents, and Durham Public School officials and Durham County Sheriff Deputies reviewed the school bus camera footage. (Id. ¶¶ 52-53.)  Students involved were charged with juvenile delinquency, and Singleton was charged with assault on a handicapped child, misdemeanor child abuse, and five counts of contributing to the delinquency of a minor. (Id. ¶¶ 54-55.)  Two years later, on May 17, 2019, Andrew "was subjected to an additional attack by one of the bullying students while in class", which caused Andrew pain, mental anguish, humiliation, and embarrassment. (Id. ¶¶ 57, 58.)

Plaintiffs filed suit in Durham County Superior Court alleging twenty-two claims related to both incidents.  Plaintiffs allege all Defendants are liable for assault (count 1), battery (count 2), conspiracy to commit assault (count 3), conspiracy to commit battery (count 4), negligent infliction of emotional distress (count 6), and intentional infliction of emotional distress (count 7) as a result of the April 28, 2017 bus attack.  They separately allege that Singleton (count 5) and the other Defendants ("Institutional Defendants") (count 8) are also liable for negligence related to the April 28, 2017 bus attack, and that the Institutional Defendants are liable for negligence related to the May 17, 2019 incident (count 9).

3

Plaintiffs allege the Institutional Defendants breached a contract (count 10) and an implied contract (count 11) and violated 42 U.S.C. § 1983 (count 12), equal protection laws in the United States Constitution and the North Carolina Constitution (count 13), and the Rehabilitation Act and Americans with Disabilities Act (count 14). They assert claims for the recovery of expenses (counts 15 and 19) and monies for care of minor child (counts 16 and 20), loss of services of minor child (counts 17 and 21), and negligent infliction of emotional distress (counts 18 and 22).

## II.

On January 29, 2020, the Institutional Defendants removed the action to this court pursuant to 28 U.S.C. §§ 1331, 1343, and 1441. (Pet. for Removal [Doc. #1].) At the time of removal, all Institutional Defendants had been served, but Singleton had not been and was not served until apparently March 30, 2020. (See id.; Aff. of Service [Doc. #34]. But see Mot. to Remand ¶ 5 (stating "Singleton was served on February 11, 2020").) On March 2, 2020, Plaintiffs moved to remand because Singleton had not consented to removal and also argued that state court is the "most proper venue" to hear the state law claims, the "federal questions raised in the Complaint are not essential to Plaintiffs' relief", and the Institutional Defendants "have not alleged any grounds supporting the position that they could not secure a proper defense to this action in State Court." (Mot. to Remand ¶¶ 7-13.)

4

The Institutional Defendants first challenge the Motion to Remand as untimely. (Defs.' Resp. to Mot. to Remand at 4 [Doc. #22].)  Because Plaintiffs are not challenging subject matter jurisdiction as the basis for their remand motion, they were required to move to remand "within 30 days after the filing of the notice of removal", 28 U.S.C. § 1447(c).  The Institutional Defendants argue that Plaintiffs waited more than thirty days after the notice of removal when they filed their March 2, 2020 remand motion. (Defs.' Resp. to Mot. to Remand at 4.)  The docket reflects that Plaintiffs moved to remand on February 28, 2020, but on March 3 the clerk's office modified the docket entry for the motion and its supporting documents and noted they were "Filed in Error" after Plaintiffs were instructed on filing procedures. (See Docs. #12-14.)  Because the initial filing was timely and Plaintiffs' March 2, 2020 filing was in response to the request of the clerk's office, it is determined on this occasion that Plaintiffs' motion to remand was timely filed.

However, their motion fails on its merits.  First, Singleton was not required to consent to removal, as he had not yet been served at the time of removal, January 29, 2020.  Plaintiffs argue that Singleton was served on February 11, 2020 (but see Aff. of Service (attesting to service on March 30, 2020)), and apparently because they moved to remand after that date, they repeatedly assert that "all served Defendants have not consented" to removal. (Mem. in Supp. of Mot. to Remand at 7 [Doc. #17].)  However, the removal statute requires that, for actions removed pursuant to 28 U.S.C. § 1441(a), "all defendants who have been

5

properly joined and served must join in or consent to the removal action." 28 U.S.C. § 1446(b)(2)(A) (emphasis added). Cf. 28 U.S.C. § 1448 (providing that a "defendant upon whom process is served after removal" has the "right to move to remand the case").  That is what happened here; all Institutional Defendants jointly petitioned for removal.  As of January 29, 2020, Singleton had not been served; therefore, his consent for removal was unnecessary.

Next, the court has subject matter jurisdiction over the entire action. Plaintiffs have alleged violations of the United States Constitution, the Rehabilitation Act, and the Americans with Disabilities Act.  The Court has original jurisdiction over these claims, see 28 U.S.C. § 1331, and supplemental jurisdiction over the other claims as they form part of the same case or controversy, see 28 U.S.C. § 1367(a).

In support of the proposition that "[u]nder section 1441(c), a district court has the discretion to remand any matter in which state law predominates", Plaintiffs cite Moore v. DeBiase, 766 F. Supp. 1311 (D.N.J. 1991), but the Third Circuit rejected that court's reasoning in Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 787 (1995).  Furthermore, 28 U.S.C. § 1441(c) addresses actions alleging a claim within the original jurisdiction of the court and "a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute."  Here, none of the claims have been made nonremovable and all of the claims are either within the Court's original or supplemental jurisdiction.

6

Plaintiffs' reliance on Dixon v. Coburg Dairy, Inc., 369 F.3d 811 (4th Cir. 2004) is also misplaced, as that plaintiff only alleged violations of South Carolina law which the defendant argued upon removal involved a substantial question of federal law and, thus, was properly in federal court. No such analysis is required here, as Plaintiffs actually allege violations of federal law.

In sum, Plaintiffs' Motion to Remand is denied on the bases they advance. However, for reasons explained infra, the state law claims against the Institutional Defendants and Singleton are remanded because all federal claims against the Institutional Defendants are being dismissed and Singleton has failed to participate in this action.

III.

All the Institutional Defendants moved to dismiss the Complaint, after which Plaintiffs moved for leave to amend the Complaint. The Institutional Defendants oppose amendment based on futility and rely in large part on their initial arguments in favor of dismissal. Likewise, in reply in further support of their motion for leave to amend, Plaintiffs rely on their opposition to the motions to dismiss. As a result, much of the analysis that follows necessarily addresses both the motion for leave to amend and the motions to dismiss.

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Motions for leave to amend should generally be granted in light of this Circuit's policy to liberally allow amendment." Abdul-Mumit v. Alexandria Hyundai, LLC, 896 F.3d 278, 293 (4th Cir. 2018) (quotations omitted).

7

However, a court may deny leave to amend if amendment is prejudicial to the opposing party, the moving party has acted in bad faith, or amendment would be futile. Id. If an amended complaint could not survive a Rule 12 motion, leave to amend may be denied as futile. See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008).

To survive a motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). However, when a complaint states facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most

8

favorable to the plaintiffs and all reasonable inferences are drawn in their favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level". Id. at 555.

Plaintiffs seek leave to amend their Complaint in part "to expound upon the factual allegations and the claims related thereto in order to help clarify the particulars in the case." (Mot. for Leave to Amend Compl. ¶ 4.) Indeed, in their proposed Amended Complaint, new allegations include information about Andrew's IEP, the handbook Mrs. Sciacca signed, the April 27, 2017 bus ride, school records of altercations in 2017 involving Andrew and other students from the bus attack, the May 17, 2019 classroom attack, the assignment of Andrew and a student from the bus attack to the same Advanced Video Technology Class and to the same Civics class despite Mrs. Sciacca's requests otherwise, and the harm Andrew suffers as a result of the bus attack. (Compare Compl. ¶¶ 34-59 with Proposed Am. Compl. ¶¶ 36-106 [Doc. #30-1].) Plaintiffs also seek to add allegations related to failure to train, (Proposed Am. Compl. ¶¶ 184, 185, 203), and violations of equal protection, (id. ¶¶ 236-247, 250, 253-55). Plaintiffs also intend to dismiss certain claims – punitive damages against Defendant Durham Public Schools, violations of the federal disability law against individually named

Case 1:20-cv-00094-NCT-LPA   Document 41   Filed 12/18/20   Page 9 of 35

defendants in their individual capacities, breach of implied contract against

Defendant Durham Public Schools, breach of contract and implied contract against

the individually named defendants in their individual capacities, negligence against

individually named defendants in their individual capacities, and violations of 42

U.S.C. § 1983 against individually named defendants in their individual capacities.

(Mot. for Leave to Amend Compl. ¶¶ 10-14.)

A.

Because the sufficiency of the allegations in support of the federal claims are

dispositive of the pending motions to dismiss and motion to amend, they are

addressed first.  Plaintiffs allege constitutional violations styled as "Violation of 42

U.S.C.A. 1983" (count 12) and "Violation of Equal Protection Laws in United

States Constitution and the Constitution of North Carolina" (count 13).[1]  More

specifically, Plaintiffs allege in count 12 that Andrew's due process rights were

violated, while they allege in count 13 that he was subjected to disability-based

bullying and assault.  Because the "United States Constitution and its amendments

do not create private rights of action", count 12 and count 13 to the extent that it

alleges a violation of the United States Constitution will be treated as having been

brought pursuant to 42 U.S.C. § 1983. Stevenson ex rel. Stevenson v. Martin Cty.

Bd. of Educ., 93 F. Supp. 2d 644, 647 (M.D.N.C. 1999).

Section 1983 provides that

---

[1] The use of All Caps was removed for clarity of reading.

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . . subjects, or causes to be
> subjected, any citizen of the United States . . . to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . . .

"To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and the laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of state

law." West v. Atkins, 487 U.S. 42, 48 (1988).

1.

In count 12, Plaintiffs allege that the Institutional Defendants were

deliberately indifferent to the bullying of Andrew and the nationwide problem of

bullying.  More specifically, they denied or were indifferent to Andrew's "right to

be free of punishment, or physical assault and battery by conduct instituted by

school employees and by peers." (Compl. ¶¶ 188, 190-94.)  Plaintiffs allege that

the Institutional Defendants "engaged in continuing, widespread, and persistent

patterns of misconduct in failing to investigate and intervene in the bullying of

[Andrew]" and that they "failed to train, supervise and monitor its [sic]

administrators, staff and employees in a situation where the need for training,

supervision and monitoring was obvious, and where the potential for real injury is

significant." (Id. ¶¶ 191, 194.)  This "decision not to train, monitor and supervise

. . . was an informal policy of the school". (Id. ¶ 194.)

a.

The Board argues that there are insufficient allegations of a deprivation of due process and that, even if there were a sufficiently alleged constitutional violation, there is an insufficient basis on which to hold the Board liable. (Bd.'s Mem. of Law in Supp. of Mot. to Dismiss ("Bd.'s Mem. in Supp.") at 15-17, 18-20 [Doc. #8].) Plaintiffs rely on Meeker v. Edmundson, 415 F.3d 317 (4th Cir. 2005), to argue that they have sufficiently alleged a due process violation and cite to allegations in the Complaint in support of holding the Board liable. (Pls.' Mem. in Opp'n to Bd.'s Mot. to Dismiss ("Pls.' Opp'n to Bd.") at 15-18 [Doc. #27].)

A school board "cannot be held liable [under § 1983] solely because it employs a tortfeasor – or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); see also Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518 (4th Cir. 2000) (applying Monell to § 1983 claim brought against school board). However, a school board can be liable under § 1983 "when execution of [its] policy or custom . . . inflicts the [constitutional] injury". Monell, 436 U.S. at 694.

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance of regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (alterations and quotations omitted).

12

The constitutional right that has allegedly been violated here is Andrew's "right to bodily integrity". The Fourth Circuit recognizes that students have a "constitutionally protected substantive due process right" "to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court." Hall v. Tawney, 621 F.2d 607, 613 (1980). Determining whether conduct violates that right involves assessing "whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience." Id. In other words, "conduct wrong enough to register on a due process scale [is] conduct that shocks the conscience, and nothing less." Waybright v. Frederick Cty., Md., 528 F.3d 199, 205 (4th Cir. 2008) (internal quotation marks omitted). "[T]he general rule is that the action must have intended to injure in some way unjustifiable by any government interest." Id. (internal quotation marks omitted).

Although "negligently inflicted harm" does not violate due process, "something more than negligence but less than intentional conduct . . . may have constitutional implications, but only in special circumstances" such as when the state is in a "special relationship" with a private individual. Id. The Fourth Circuit "has consistently read" Supreme Court precedent on the issue "to require a custodial context before any affirmative duty can arise under the Due Process Clause." Pinder v. Johnson, 54 F.3d 1169, 1175 (1995) (discussing DeShaney v.

13

Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189 (1989)).  While a state's attendance laws may "impose some limit on a student's freedom to act on his own behalf, the Fourth Circuit, in an unpublished decision, has joined other circuits in finding that such a relationship between the school and the student does not create a special relationship sufficient to trigger the substantive protections of the Due Process Clause." Smith v. Sch. Bd. of Chesapeake, No. 2:18CV589, 2019 WL 2656204, at *5 (E.D. Va. June 27, 2019) (citing Stevenson v. Martin Cty. Bd. of Educ., 3 F. App'x 25, 31 (4th Cir. 2001), cert denied, 534 U.S. 821 (2001) (citing cases from the Third, Fifth, Sixth, Seventh, Eighth, and Tenth Circuit Courts of Appeals)).

Because the Board cannot be held liable on a respondeat superior theory, Plaintiffs undertake to hold the Board liable for its alleged failure to train and its alleged persistent and widespread failure to investigate and intervene.  A school board can be liable under § 1983 for failure to train if its failure to train "in a relevant respect evidences a 'deliberate indifference' to" the student's constitutional rights. Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  "[O]nly if, 'in light of the duties assigned to specific . . . employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of the constitutional rights,' can [a school board] reasonably 'be said to have been deliberately indifferent to that need.'" Id. (quoting City of Canton, 489 U.S. at 390).  In other words, "[o]nly where a failure to train reflects a 'deliberate' or

14

'conscious' choice . . . can a [school board] be liable for such failure under § 1983." Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000) (quoting City of Canton, 489 U.S. at 389). Mere negligence cannot suffice to impose § 1983 liability. Jordan, 15 F.3d at 341. "Moreover, neither a policy or custom of deficient training nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone." Id.

Assuming for the sake of argument that Plaintiffs sufficiently alleged that Singleton's conduct in April 2017 violated Andrew's substantive due process right, this singular incident is insufficient to show that the Board has a custom or policy of failing to train Singleton, as Plaintiffs have alleged no other incidents involving him. As for the May 2019 classroom incident, Plaintiffs allege only that Andrew was "subjected to an additional attack", which is not sufficient to allege conduct that shocks the conscious. Plaintiffs have also failed to allege any facts that the Board had a custom or policy of failing to train anyone associated with the classroom incident.

The proposed Amended Complaint adds the allegation that Singleton neither stopped the bus after the students began attacking Andrew nor attempted to intervene "because, upon information and belief, he did not have adequate training." (Proposed Am. Compl. ¶¶ 57, 58.) Elsewhere in the proposed Amended Complaint (alleging negligence), Plaintiffs allege that the Institutional Defendants failed to train Singleton "on proper control methods for students with Special needs and/or Autism", "on proper interaction with children with Special Needs

15

and/or Autism", "on proper disciplinary means for unruly children on a bus", and "on proper response to unruly students on a school bus". (Id. ¶ 184c-f.) While Plaintiffs attempt to identify specific training deficiencies, they still have not alleged any other incident involving Singleton. Nor do the allegations reflect any deliberate or conscious choice by the Board regarding its training of Singleton that led to the violation of Andrew's right to bodily integrity.

The proposed allegations surrounding the May 2019 classroom incident also fail to save the claim. On May 17, 2019, Bethany, "one of the school bus bullying students" made disparaging comments to Andrew before chasing him out of the classroom and down the hall. (Id. ¶¶ 78, 80-81.) The substitute teacher then escorted Andrew to his next class. (Id. ¶ 82.) Elsewhere in their proposed Amended Complaint (alleging negligence), Plaintiffs allege various ways the Institutional Defendants failed to train the classroom teacher. (Id. ¶ 203b-d.)

However, Plaintiffs have not sufficiently alleged that Andrew's substantive due process right was violated on May 17, 2019 in the first place. This right protects Andrew from "state intrusions" into his bodily integrity "through means so brutal, demeaning, and harmful as literally to shock the conscience of a court". Hall, 621 F.2d 607. Even if it is possible that the concept of "state-created danger" applied here, see Doe v. Rosa, 795 F.3d 429, 439 (4th Cir. 2015), that question need not be answered. Bethany's conduct – calling Andrew an "autistic failure of an abortion", telling him "[t]hat's why you got your retarded ass kicked on the bus", and then chasing him down the hall – may be cruel but it does not

16

rise to the level of a constitutional violation. Even if that were not the case, the proposed allegations of events leading up to the classroom incident – Price's placing Andrew and his bus attackers in the same classroom despite the Sciaccas' request not do so, records of "altercations" from May to December 2017 between Andrew and "students who were present during and/or participated in" the bus attack, and a March 2019 email to the assistant principal notifying him that one of those students was continuing to harass and assault Andrew – do not sufficiently allege a failure to train that rises to the level of deliberate indifference. (See Proposed Am. Compl. ¶¶ 71-77.)

In addition to the Institutional Defendants' alleged failure to train, Plaintiffs allege that they "engaged in continuing, widespread, and persistent patterns of misconduct in failing to investigate and intervene in the bullying of" Andrew. Yet, Plaintiffs do not allege any facts to support this conclusory allegation. Instead, they allege that, after Andrew reported the school bus attack to his parents, "Durham Public School officials and Durham County Sheriff Deputies reviewed the school bus camera footage." (Compl. ¶¶ 52, 53.) Ultimately, the students involved in the attack were charged with juvenile delinquency and Singleton was criminally charged. (Id. ¶¶ 54, 55.) As for the May 2019 classroom incident, these allegations do not plausibly allege a constitutional violation, much less any action or omission by the Board. (See id. ¶¶ 57, 58.) In sum, the factual allegations fall far short of alleging a persistent and widespread practice that would

17

constitute a custom or usage with the force of law.  And, for the same reasons explained above, the proposed Amended Complaint does not advance this claim.

b.

The Individual Defendants moved to dismiss this claim against them by challenging the sufficiency of the allegations that they failed to supervise Singleton. (Defs. Price, Mubenga, Lee, Beyer, & Adkins' Mem. of Law in Supp. of Mot. to Dismiss ("Individual Defs.' Mem. in Supp.") at 9-12 [Doc. #10].)  In response, Plaintiffs consented to dismissal of their individual capacity claims against the Individual Defendants. (Pls.' Mem. in Opp'n to Individual Defs.' Mot. to Dismiss ("Pls.' Opp'n to Individual Defs." at 12 [Doc. #28].)  Indeed, the proposed Amended Complaint only pursues an official capacity claim against them.  As explained above, though, Plaintiffs have failed to state a due process claim against the Board in their Complaint or proposed Amended Complaint.  Therefore, both the individual and official capacity claims against the Individual Defendants fail.

2.

In count 13, Plaintiffs allege that the Institutional Defendants violated the Equal Protection Clause when they "knowingly acquiesced, displayed a deliberate indifference to, or tacitly or implicitly authorized the continued disability-based bullying and deprivation of [Andrew']s fundamental right to an education." (Compl. ¶ 205.)

The Equal Protection Clause requires that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

18

XIV, § 1.  It is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To state a claim for violation of the Equal Protection Clause, a plaintiff must allege that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

a.

The Board argues that Plaintiffs have failed to allege, other than in conclusory form, any other students who were treated differently than Andrew and that the alleged discrimination was intentional. (Bd.'s Mem. in Supp. at 18.)  Even if there were sufficient allegations of an underlying constitutional violation, the Board contends that there are insufficient allegations as to its liability. (Id. at 19-20.)  Plaintiffs respond that they have "distinguished [Andrew] from non-handicapped students", the names of whom they will disclose once the information is available to them, and that the Board's failure to train and supervise are actionable because they are alleged to constitute "'tacit authorization' of or 'deliberate indifference' to constitutional injuries." (Pls.' Opp'n to Bd. at 15, 17.) The Board replies that Plaintiffs failed to respond to the Board's argument that the Complaint lacks "facts that would support a conclusion that any alleged different treatment was intentional and with a purpose to discriminate." (Bd.'s Reply at 9 [Doc. #32].)

Plaintiffs allege that "non-disabled students attending were not regularly subject to disability-based bullying and assault", (Compl. ¶ 199), but this allegation is insufficient to claim that similarly situated students were treated differently than Andrew. Furthermore, elsewhere in the Complaint, Plaintiffs appear to allege that the Board failed to address <u>any</u> bullying despite the nation-wide problem. (<u>See, e.g.</u>, <u>id.</u> ¶ 193; <u>see also</u> <u>id.</u> ¶ 200 (alleging that the Institutional Defendants knew of Andrew "and others being bullied").) Moreover, there is no allegation that the treatment of Andrew was the result of intentional or purposeful discrimination based on his disability.

As with Plaintiffs' due process claim, even if they had successfully alleged a constitutional violation, to hold the Board liable they must also allege that the violation of the Equal Protection Clause "was the result of municipal custom, policy, or practice." <u>Fitzgerald v. Barnstable Sch. Comm.</u>, 555 U.S. 246, 257-58 (2009). To that end, Plaintiffs allege that the Board had "a practice of tolerating the disability-based bullying" and "of failing to act on complaints of bullying" which evidences "a continuing, widespread, and persistent pattern of misconduct" and "a deliberate indifference to or tacit authorization of the conduct". (Compl. ¶¶ 202-03.) The Complaint, however, only alleges two specific incidents of bullying – the April 28, 2017 bus incident and the May 17, 2019 classroom "attack". Plaintiffs allege that after the bus incident, "Durham Public School officials and Durham County Sheriff Deputies reviewed the school bus camera footage", the students involved were charged with juvenile delinquency, and Singleton was criminally

charged.  This incident, according to Plaintiffs, put the Board on notice; yet, Plaintiffs do not allege any other bullying of Andrew until over two years later. These facts are simply insufficient to show tacit authorization of or deliberate indifference to the bullying of Andrew, much less disability-based bullying of Andrew.

The proposed Amended Complaint does not save the claim.  Plaintiffs propose adding allegations that Singleton did not subject two other non-disabled students who were present on the bus on April 27, 2017 to bullying and assault. (Proposed Am. Compl. ¶¶ 237-42.)  However, despite describing this as "disability-based bullying and assault", (id. ¶¶ 238, 242), the allegations do not plausibly allege that Singleton acted with discriminatory intent.  The proposed Amended Complaint alleges that "at the time of the attack" "the children riding the bus were loud and unruly" and "Singleton was trying to get control of the unruly children on the bus." (Id. ¶¶ 52-53.)  He "stated out loud a suggestion that paying students money to physically assault [Andrew] could be an appropriate method of discipline to address his perceived concerning behavioral issues (identified in [Andrew's] IEP) being displayed on the bus." (Id. ¶ 55.)  Singleton's failure to stop the bus or intervene after students began attacking Andrew was allegedly due to his inadequate training. (Id. ¶¶ 57-58.)

The proposed Amended Complaint also alleges that Price and school administrators refused Mrs. Sciacca's requests that Andrew and his assailants not be placed in the same classroom. (E.g., id. ¶¶ 250, 253-54.)  Specifically, when

Bethany and Andrew were assigned to the same Advanced Video Technology class, Andrew was the student removed from the class and non-disabled Bethany was allowed to remain. (Id. ¶¶ 91-93, 245-46.)  As for the Civics class to which both were assigned, school administrators refused to remove either student because the class was required for graduation. (Id. ¶¶ 94-97, 247.)  However, absent from the proposed Amended Complaint are allegations that school administrators granted requests for similarly situated students or that their actions resulted from discriminatory intent.

The proposed Amended Complaint continues to allege a failure "to act on complaints of bullying" that shows "a continuing, widespread, and persistent pattern of misconduct by the School District" and "a deliberate indifference to or tacit authorization of the conduct". (Id. ¶ 252.)  But it still lacks allegations that non-disabled students' complaints were not ignored or that Plaintiffs' complaints were ignored as a result of discriminatory intent.  For example, Plaintiffs propose adding the allegation that non-disabled Bethany assaulted Andrew on June 24, 2019 after which she complained to administrators that Andrew had harassed her, yet her complaint was not investigated. (Id. ¶ 244.)  On the other hand, the proposed Amended Complaint alleges that the administration did investigate the May 17, 2019 attack on Andrew, albeit not to Plaintiffs' satisfaction. (Id. ¶ 86-87.)  Not only does the proposed Amended Complaint not sufficiently allege an Equal Protection violation but it is also missing sufficient allegations of a custom, policy, or practice of the Board.

22

b.

The Individual Defendants moved to dismiss the § 1983 equal protection claim asserted against them in their individual capacities based on the same reasons advanced by the Board, as well as their argument that the Complaint lacked individualized allegations against any of them. (Individual Defs.' Mem. in Supp. at 11.)  Plaintiffs did not respond to these challenges, which supports dismissal of the equal protection claim altogether against these defendants in their individual capacities.  This conclusion is confirmed by Plaintiffs' pursuit of the § 1983 claims in the proposed Amended Complaint against the Individual Defendants in their official capacities only[2]. (See Proposed Am. Compl. Eleventh Cause of Action.)  And, for the same reasons the equal protection claim against the Board fails, the official capacity claim against the Individual Defendants fails as well.

B.

Plaintiffs next allege that the Institutional Defendants violated § 504 of the Rehabilitation Act, as well as the Americans with Disabilities Act ("ADA"), when they "did not curtail the disability-based bullying of [Andrew], and indeed, allowed one of the bullying students to be in a class with [him]" despite having "knowledge

---

[2] As explained above, Plaintiffs explicitly bring their due process claim under § 1983 while separately alleging a violation of the Equal Protection Clause without mentioning § 1983.  Yet, both the due process claim and equal protection claim are understood to be alleged pursuant to § 1983.

23

that [Andrew] was bullied and called at least one derogatory name". (Compl. ¶¶ 213-14.)

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. "To the extent possible, . . . the ADA and Rehabilitation Act [are construed] to impose similar requirements" and, thus, "they require a plaintiff to demonstrate the same elements to establish liability." Halpern v. Wake Forest Univ. Health Sciences, 669 F.3d 454, 461 (4th Cir. 2012). If a student contends that he has been "excluded from an educational program", he must allege that "(1) he has a disability, (2) he is otherwise qualified to participate in the defendant's program, and (3) he was excluded from the program on the basis of his disability." Id. (footnote omitted). "To prove discrimination in the education context," "either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children." Sellers v. Sch. Bd. of Manassas, 141 F.3d 524, 529 (4th Cir. 1998).

24

However, when a plaintiff's § 504 claim is based on student-on-student wrongdoing, as is Plaintiffs', the Fourth Circuit has held the plaintiff to a different standard – one of deliberate indifference. S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty., 819 F.3d 69, 75-76 (2016) (applying Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629 (1999) to the § 504 context); see also S.S. v. E. Ky. Univ., 532 F.3d 445, 452-53 (6th Cir. 2008) (analyzing the plaintiff's § 504 and ADA claims of peer-on-peer harassment together under same standard). The plaintiff must allege

> that he was an individual with a disability, harassed by fellow
> students based on his disability; that the disability-based harassment
> was sufficiently "severe, pervasive, and objectively offensive" that it
> effectively deprived him of "access to educational benefits and
> opportunities" at school, and that the school knew about the
> disability-based student-on-student harassment and was deliberately
> indifferent to it.

S.B. ex rel. A.L., 819 F.3d at 76 (internal citation omitted). In this context, the Supreme Court has "set[] the bar high for deliberate indifference." Id. (referring to Davis). "[A] school may not be held liable . . . under § 504 for what its students do, but only for what is effectively 'an official decision by [the school] not to remedy' student-on-student harassment." Id. at 76-77 (second alteration in original). "[I]t is not enough that a school has failed to eliminate student-on-student harassment, or to impose the disciplinary sanctions sought by a victim." Id. at 77. "Instead, a school will be liable for student-on-student harassment only where its response . . . or lack thereof is clearly unreasonable in light of the known circumstances." Id. (internal quotation marks omitted). "That is not to say . . .

25

that only a complete failure to act can constitute deliberate indifference, or that any half-hearted investigation or remedial action will suffice to shield a school from liability." Id. "But school administrators are entitled to substantial deference when they calibrate a disciplinary response to student-on-student bullying or harassment, and a school's actions do not become 'clearly unreasonable' simply because a victim or his parents advocated for stronger remedial measures." Id. (internal citations omitted).

1.

The Board contends that Plaintiffs have failed to allege facts showing that Andrew was bullied and called a derogatory name because of his disability, or that he was deprived of educational opportunities or benefits, or that school officials were deliberately indifferent to any bullying. (Bd.'s Mem. in Supp. at 20.) Plaintiffs respond by applying the "bad faith or gross misjudgment" standard and making a passing reference to deliberate indifference. (Pls.' Opp'n to Bd. at 18-19.) They then impermissibly rely on facts not alleged in the Complaint.

The Complaint does not allege that the students attacked Andrew on the bus based on his disability. Instead, they did so after Singleton allegedly offered to pay them to slap Andrew, and the allegations do not plausibly allege Singleton did so based on Andrew's disability. There is also no allegation that the "additional attack" two years later in the classroom was based on Andrew's disability. Likewise, the Complaint is missing allegations that any disability-based harassment effectively deprived Andrew of access to educational benefits and opportunities at

26

school or that school officials knew about disability-based harassment and acted with deliberate indifference.

As the Board recognized in its reply brief, Plaintiffs also responded with a passing reference to the adverse effect of the Institutional Defendants' actions on Andrew's "ability to receive a free and appropriate education", (Pls.' Opp'n to Bd. at 19). A free and appropriate education ("FAPE") "comprises special education and related services", and an IEP "serves as the primary vehicle for providing each child with the promised FAPE." Fry v. Napoleon Cmty. Schs., ___ U.S. ___, 137 S. Ct. 743, 748-49 (2017). The Board correctly explains that before a plaintiff can bring a claim alleging the denial of a student's FAPE, even if brought under § 504 or the ADA, he must first exhaust administrative procedures under the Individuals with Disabilities Education Act ("IDEA"). Id. at 752. To the extent, if at all, Plaintiffs have alleged a denial of a FAPE, they have not alleged that they exhausted their administrative procedures.

Plaintiffs' proposed Amended Complaint presents a much more detailed picture in response to the motions to dismiss, but the Institutional Defendants maintain that the proposed Amended Complaint "continues to lack allegations that would support a plausible deliberate indifference claim." (Defs.' Resp. to Mot. to Amend at 15.) They also argue that "amendment of the complaint to pursue such a claim would be futile as Plaintiffs have already set forth facts to defeat a conclusion of deliberate indifference." (Id. at 16.) In support of this position, they rely on the affidavit Plaintiffs' improperly submitted with their brief in opposition to

dismissal. Cf. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 164 (4th Cir. 2016) (explaining that a document not attached to or expressly incorporated into a complaint may be considered "if the document was integral to the complaint and authentic."). Not only did these defendants previously argue against consideration of such an affidavit at the motion to dismiss stage, but it was not considered when evaluating the sufficiency of the § 504/ADA claim in the Complaint and it will not be considered as part of the opposition to amendment because it is improper to do so at this stage.

As previously described, the proposed Amended Complaint alleges that Singleton attempted to gain control of the unruly students on the bus, told the students they could tease Andrew, and then suggested paying them to assault him. When the students did so, Singleton did not intervene because he lacked adequate training. After school officials and the Sheriff's Department viewed camera footage from the bus, the students and Singleton were charged.

Andrew's mother informed school officials that he was diagnosed with post-traumatic stress disorder after the bus attack. (Id. ¶¶ 66, 69.) Throughout the remainder of 2017, the school had a record of Andrew having at least eleven "altercations" with "students who were present during and/or participated in" the bus attack. Andrew's parents made multiple requests that he not be assigned to the same classroom as the "school bus attackers", and his mother notified the assistant principal in March 2019 that one of the students who participated in the bus attack was continuing to harass and assault Andrew. Yet, Andrew and

28

Bethany were in the same classroom in May 2019 when she made disparaging remarks to him before chasing him down the hall.

Andrew's parents emailed Price "questioning how the administration allowed these incidents to continue to occur" and on June 6, June 13, and June 14 "requested updates" from "Price about her investigation into the May 17, 2019 attack". (Id. ¶¶ 84-85.) On June 14, the assistant principal responded and informed them "that the administration determined after speaking with several students that the student involved in the bus attack had not committed any violations of Durham Public Schools Policy during the May 17, 2019 incident"; yet, neither Price nor anyone else conducting the investigation spoke with the substitute teacher "to obtain his statement of the events that transpired in the classroom." (Id. ¶¶ 86-88.) "Price took no further action to discipline" Bethany. (Id. ¶ 89.)

The following month, on June 24, 2019, Andrew's mother again emailed the assistant principal "requesting that [Andrew] no longer be assigned to classes with students who participated in the school bus attack." (Id. ¶ 90.) Yet, on July 22, Andrew and Bethany were both assigned to Andrew's "desired Advanced Video Technology Class" so Andrew's parents asked that Bethany "be assigned to a different class." (Id. ¶¶ 91-92, 245.) "Price denied the request to move" Bethany, which caused Andrew to move to a second study hall to avoid Bethany. (Id. ¶ 93, 246, 264.) Andrew and Bethany were also assigned to the same Civics class, and again Andrew's mother requested that they be separated. (Id. ¶¶ 94-95,

29

245, 247.) "School officials denied this request even after being reminded of the history of harassment and bullying [Andrew] had endured from [Bethany]." (Id. ¶ 96.) Because Civics was a graduation requirement, Andrew had to remain in the class with Bethany which caused his academic performance to suffer. (Id. ¶¶ 97-98, 265.)

Plaintiffs allege that "[t]he denial of opportunities by Defendants to [Andrew] were done with knowledge of the bullying, harassment and intimidation by other students against [Andrew] and was done with the knowledge of [Andrew's] PTSD diagnoses and was done by Defendants in bad faith and/or gross misjudgment." (Id. ¶ 266.)

As the Fourth Circuit noted, the standard for student-on-student harassment is deliberate indifference and for that the bar is set high. S.B. ex rel. A.L., 819 F.3d at 76. A school is deliberately indifferent to "student-on-student harassment only where its 'response . . . or lack thereof is clearly unreasonable in light of the known circumstances.'" Id. at 77 (quoting Davis, 526 U.S. at 648). But, "[t]hat is not to say, of course, that only a complete failure to act can constitute deliberate indifference, or that any half-hearted investigation or remedial action will suffice". Id. For example, if a school knows that its "'verbal reprimands' [are] leaving student-on-student harassment unchecked, then its failure to do more may amount to deliberate indifference under Davis." Id. (also citing Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 669-70 (2d Cir. 2012) which recognized that a school's

response "may be unreasonable where school 'dragged its feet' before implementing 'little more than half-hearted measures'").

While Plaintiffs have proposed alleging more details than in their Complaint, they have not sufficiently alleged that the Board acted with deliberate indifference. They have not alleged any information as to the "altercations" in 2017 between Andrew and the students from the bus from which it could be plausibly inferred that the school's actions or omissions, whatever they may have been, in response to the altercations were clearly unreasonable in light of the circumstances. Bethany is not identified as having been involved in any altercations with Andrew between the 2017 school bus attack and the 2019 classroom incident. Mrs. Sciacca's email to the assistant principal notified him that one of the students from the bus attack was continuing to harass and assault Andrew during the school day, but there are no other facts alleged as to what the school did or did not do in response to that email. What is alleged is that after Andrew was attacked on the bus, the students involved were charged with juvenile delinquency. After the classroom incident with Bethany two years later, the school investigated the episode but determined she had not violated any school district policy. Plaintiffs complain that the investigators did not take a statement from the substitute teacher, that Andrew was forced to move to a study hall from his preferred technology class, and that he and Bethany were required to remain in Civics

because it was required for graduation.[3]  In light of the high bar for deliberate indifference and the circumstances alleged, Plaintiffs have not plausibly stated that the school's acts or omissions were clearly unreasonable.

## 2.

The Individual Defendants move to dismiss the § 504/ADA claim against them in their individual capacities because, they argue, there is no individual liability under those statutes. (Individual Defs.' Mem. in Supp. at 12-13.)  Plaintiffs responded by voluntarily dismissing this claim against these defendants in their individual capacities, (Pls.' Opp'n to Individual Defs. at 12), and their proposed Amended Complaint alleges the claim against these defendants only in their official capacities.  And, for the reasons the claim fails against the Board, so, too, does the official capacity claim against the Individual Defendants.

## C.

In sum, in their Complaint, Plaintiffs have failed to allege sufficiently a § 1983 claim for due process or equal protection or a violation of § 504 of the Rehabilitation Act or the ADA against the Institutional Defendants, and their proposed Amended Complaint would not itself survive a motion to dismiss those claims.  Therefore, the federal claims asserted against the Board and the Individual Defendants are dismissed, leaving only state law claims alleged against them.

---

[3] There is no consensus among courts as to what harm must result from a failure to investigate. See, e.g., Kollaritsch v. Mich. State Univ. Bd. of Trustees, 944 F.3d 613 (6th Cir. 2019).  Nevertheless, that has not been made an issue here.

32

As explained earlier, those claims are before this Court as part of its supplemental jurisdiction. When "all claims over which [the court] has original jurisdiction" are dismissed, the court "may decline to exercise supplemental jurisdiction" over the remaining state law claims. 28 U.S.C. § 1367(c)(3). See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (listing factors of judicial economy, convenience, fairness, and comity and explaining that "[w]hen the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction"). Plaintiffs have alleged nearly twenty state law claims in this action. Because of the pendency of these motions to dismiss, there has been no Rule 26(f) conference or report and, therefore, discovery has not yet begun. In sum, the action is in its early days.

These moving defendants are not the only defendants, though. However, the other defendant, Gilbert Singleton, against whom most of the same claims are asserted has failed to participate at all in this action, prompting Plaintiffs to seek entry of default against him. He has made no appearance in the approximately eight months since he was served and nothing suggests that he would choose to do so now or in the future. Maintaining the entire action in this Court simply because Singleton remains a party does not make sense. The Court must keep the action as it pertains to the claims against Singleton over which the Court has original jurisdiction. However, because all federal claims against the Institutional

Case 1:20-cv-00094-NCT-LPA   Document 41   Filed 12/18/20   Page 33 of 35

Defendants have been dismissed, it is determined that all state law claims asserted against all Defendants – the Board, the Individual Defendants, and Singleton – are remanded to Durham County Superior Court. See Carnegie-Mellon Univ., 484 U.S. at 357 (finding discretion to remand to state court).

IV.

For the reasons explained above, IT IS HEREBY ORDERED that

1) the Motion to Remand to Durham County Superior Court [Doc. #16] is DENIED on the bases proffered by Plaintiffs;

2) the Motion to Dismiss by Defendants The Durham County Board of Education a/k/a Board of Education Durham Public Schools and Durham Public Schools Board of Education [Doc. #7] is GRANTED IN PART AND DENIED IN PART AS MOOT in that it is granted as to the claims alleging violations of the Due Process Clause and Equal Protection Clause of the United States Constitution, § 504 of the Rehabilitation Act, and the Americans with Disabilities Act but denied as moot as to the state law claims;

3) the Motion to Dismiss by Defendants Renee Price, Dr. Pascal Mubenga, Michael Lee, Natalie Beyer, and Arasi Adkins [Doc. #9] is GRANTED IN PART AND DENIED IN PART AS MOOT in that it is granted as to the official and individual capacity claims alleging violations of the Due Process Clause and Equal Protection Clause of the United States Constitution, § 504 of the

34

Rehabilitation Act, and the Americans with Disabilities Act but denied as moot to the state law claims;

4) the Motion for Leave to Amend the Complaint [Doc. #30] is DENIED IN PART AND DENIED IN PART AS MOOT in that it is denied as to the claims against the moving defendants alleging violations of the Due Process Clause and Equal Protection Clause of the United States Constitution, § 504 of the Rehabilitation Act, and the Americans with Disabilities Act but denied as moot as to the state law claims; and

5) all state law claims asserted against all Defendants are remanded to Durham County Superior Court.

This the 18th day of December, 2020.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge